IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation<br>Securities, Derivative &<br>"ERISA Litigation | §<br>§<br>§<br>§ | MDL-1446 |
| MARK NEWBY, ET AL.,<br><br>               Plaintiffs,<br><br>VS.<br><br>ENRON CORPORATION, ET AL.,<br><br>               Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-01-3624<br>CONSOLIDATED CASES |
| DAVID JOSE, ET AL.,<br><br>               Plaintiffs,<br><br>VS.<br><br>ARTHUR ANDERSEN, L.L.P., ET AL.<br><br>               Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-03-1087 |
| RICHARD CHOUCROUN, ET AL.,<br><br>               Plaintiffs,<br><br>VS.<br><br>ARTHUR ANDERSEN, L.L.P., ET AL.<br><br>               Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-03-3320 |
| MARY BAIN PEARSON AND JOHN<br>MASON,<br><br><br>               Plaintiffs,<br>VS.<br><br>ANDREW S. FASTOW, ET AL.,<br><br>               Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-03-5332 |
| FRED A. AND MARIAN ROSEN,<br>ET AL.,<br><br><br>               Plaintiffs,<br>VS. | §<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-03-5333 |

|                                    |   |                                |
|------------------------------------|---|--------------------------------|
| ANDREW S. FASTOW, ET AL.,          | § |                                |
|                                    | § |                                |
|                                    | § |                                |
| Defendants.                        | § |                                |
| HAROLD AND FRANCES AHLICH, ET      | § |                                |
| AL.,                               | § |                                |
|                                    | § |                                |
|                                    | § |                                |
| Plaintiffs,                        | § |                                |
| VS.                                | § | CIVIL ACTION NO. H-03-5334     |
|                                    | § |                                |
| ANDREW S. FASTOW, ET AL.,          | § |                                |
|                                    | § |                                |
| Defendants.                        | § |                                |
| RUBEN AND IRENE DELGADO, ET AL.    | § |                                |
|                                    | § |                                |
|                                    | § |                                |
| Plaintiffs,                        | § |                                |
| VS.                                | § | CIVIL ACTION NO. H-03-5335     |
|                                    | § |                                |
| ANDREW S. FASTOW, ET AL.,          | § |                                |
|                                    | § |                                |
| Defendants.                        | § |                                |
| DON L. GUY, TRUSTEE FOR THE        | § |                                |
| GUY FAMILY LIVING TRUST,           | § |                                |
| ET AL.,                            | § |                                |
|                                    | § |                                |
| Plaintiffs,                        | § |                                |
|                                    | § |                                |
| VS.                                | § | CIVIL ACTION NO. H-04-3330     |
|                                    | § |                                |
| ARTHUR ANDERSEN, L.L.P., ET AL.    | § |                                |
|                                    | § |                                |
| Defendants.                        | § |                                |
| CYNTHIA ADAMS, ET AL.,             | § |                                |
|                                    | § |                                |
| Plaintiffs,                        | § |                                |
|                                    | § |                                |
| VS.                                | § | CIVIL ACTION NO. 04-3331       |
|                                    | § |                                |
| ARTHUR ANDERSEN, L.L.P., ET AL.    | § |                                |
|                                    | § |                                |
| Defendants.                        | § |                                |
| JANE BULLOCK, ET AL.,              | § |                                |
|                                    | § |                                |
| Plaintiffs,                        | § |                                |
|                                    | § |                                |
| VS.                                | § | CIVIL ACTION NO. 04-4455       |
|                                    | § |                                |

```
ARTHUR ANDERSEN, L.L.P., ET AL. §
                                §
            Defendants.         §
                                §
JOHN AND PEGGY ODAM, et al.,    §
                                §
            Plaintiffs,         §
                                §
VS.                             §   CIVIL ACTION NO. H-01-3914
                                §
ENRON CORPORATION, INC.,        §
                                §
            Defendants.         §
```

## OPINION AND ORDER OF DISMISSAL WITH PREJUDICE

Pending before the Court are Fleming & Associates, L.L.P. Plaintiffs' motions for leave to amend their complaints pursuant to the Court's July 11, 2003 scheduling order[1] in the following cases: H-03-5334, *Ahlich, et al. v. Fastow, et al.,* #77, amended #97; H-04-4455, *Bullock, et al., v. Arthur Andersen, L.L.P., et al.,* #62; H-03-3320, *Choucroun et al., v. Arthur Andersen, L.L.P.,* #136; H-03-5335, *Delgado, et al. v. Fastow, et al.,* #68; H-03-1087, *Jose, et. al. v. Arthur Andersen, L.L.P., et al.,* #15; H-03-5332, *Pearson, et al. v. Fastow, et al.,* #50; and H-03-5333 *Rosen, et al. v. Fastow, et al.,* #58; H-04-3331, *Adams, et al. v. Arthur Andersen, L.L.P., et al.,* #32; and H-04-3330, *Guy, et al. v. Arthur Andersen, L.L.P., et al.,* #33.  The same pleadings, both in support of and in opposition to the motion, have been filed in these nine cases.[2]  After reviewing them carefully, the Court finds that the

---

[1] Instrument #4836, amended by July 11, 1006 order (#4848).

[2] Fleming & Associates also represents Plaintiffs in H-01-3914, *Odam v. Enron Corp., et al.,* which was originally filed in the Southern District of Texas and in which an amended complaint

motions for leave to amend should be denied as futile, that the exclusively state-law claims in these nine cases are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), and that the cases should therefore be dismissed with prejudice.  Moreover, H-01-3914, *Odam v. Enron Corporation*, is preempted for the same reasons and the case should also be dismissed.

These nine actions, originally filed in Texas state court, assert Texas state-law claims against Defendants and were removed to this Court on "related to" bankruptcy jurisdiction, not under the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. § 77p(b)(1) and § 78bb(f)(1)("No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-- . . . an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security"), and coordinated or consolidated with *Newby*.  The proposed amended complaints are identical except for identification of the individual plaintiffs.  They replead claims against several former Enron directors and officers, Arthur Andersen, L.L.P. ("Andersen") and some former Andersen partners for fraud, fraud on the market, civil conspiracy, aiding and abetting, negligent misrepresentation, and violations of the Texas Business and Commerce Code § 27.01

---

asserting Texas state-law claims, virtually identical to the proposed complaints in the other actions, was filed as of right, before any responsive pleadings, as allowed by Fed. R. Civ. P. 15(a).

(Fraud in Stock Transactions) and Texas Securities Act art. 581-33; they add a claim for negligence against Andersen; and they also assert the first six claims against the Financial Institutions and Bank of America Corporation, Bank of America, N.A., and Banc of America Securities LLC (collectively, "Bank of America") for the first time.

## Standard of Review under Rule 15(a)

Federal Rule of Civil Procedure 15(a) provides in relevant part,

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

A court has discretion in deciding whether to grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 181 (1962). Since the language of the rule "'evinces a bias in favor of granting leave to amend," the court must find a "substantial reason" to deny such a request. *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, Civ. A. No. H-05-4389, 2006 WL 2521411, *3 (S.C. Tex. Aug. 29, 2006), *quoting Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004), and *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Factors for the court to consider in determining whether a substantial reason to deny a motion for leave to amend include "undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

While Rule 15(a) does not establish a time limit for filing a motion for leave to amend, "'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Smith v. EMC Corp.*, 393 F.3d at 595, *quoting Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992), *in turn quoting Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981). If there is substantial delay, the plaintiff bears the burden of demonstrating that it was due to oversight, inadvertence or excusable neglect, *Id.*, *citing Gregory*, 634 F.2d 203.

Where the proposed new claims are time-barred, allowing amendment is futile. *Williams v. Simmons*, 185 F. Supp. 2d 665, 674 (N.D. Tex. 2001); *Columbraria Ltd. v. Pimenta*, 110 F. Supp. 2d 542, 549 (S.D. Tex. 2000).

**Opposition to Amendment**

## I. Financial Institutions

Under SLUSA, 15 U.S.C. §§ 77p(b) (applicable to remedies under the Securities Act of 1933) and 77bb(f)(1-2) (applicable to remedies under the Securities Exchange Act of 1934), a securities action is preempted if the following requirements are satisfied:

1. The action is a "covered class action" as defined in the statute.

2.  The claims are based upon state law.

3.  The action involves a "covered security" as defined by the statute.

4.  The defendant is alleged to have misrepresented or omitted a material fact in connection with the purchase or sale of the security.[3]

In the definition section of SLUSA, 15 U.S.C. § 77p(f)(2) or § 78bb(f)(5)(b), the statute defines a "covered class action" in two ways:

> (I) any single lawsuit in which–
>> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of
>>> the prospective class . . . predominate . . . ; or

---

[3] The Private Securities Litigation Reform Act ("PSLRA"), codified in part at 15 U.S.C. §§ 77z-1 and 78u-4, amending the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, was passed in 1995 "in response to an increase in securities fraud suits perceived as frivolous . . . ." *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003).  To protect defendants from strike suits, the PSLRA imposed a stay on discovery and  established heightened pleading requirements in federal securities suits  in an effort to screen out frivolous complaints before they triggered unnecessary costly discovery and disruption of business activities. *Id.*  When the PSLRA failed, in part because plaintiffs turned to state court to file their securities suits to avoid the more stringent federal court requirements, Congress passed SLUSA in 1998.  SLUSA's purpose was "'to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than Federal court.' . . . This problem was addressed in SLUSA in two ways:  (1) by preempting certain securities fraud class actions brought under state law, and (2) by granting power to federal court judges to quash discovery in state court actions if discovery in the state case conflicted with an order of the federal court." *Id., citing* House Report 105-640 (1998).

> > (II) one or more named parties seek to recover damages on
> > a representative basis . . .  and questions of law
> > or fact common to those persons or members of the
> > prospective class predominate . . .; or
> (ii) any group of lawsuits filed in or pending in the
> same court and involving common questions of law or
> fact, in which
> > (I) damages are sought on behalf of more than 50 persons;
> > and
> > (II) the lawsuits are joined, consolidated, or otherwise
> > proceed as a single action for any purpose.
> > > . . . .

Subsection 77p(f)(1)(D) or 78bb(f)(5)(F), "Rule of construction"

for the term "covered class action," provides,

> > Nothing in this paragraph shall be
> > construed to affect the discretion
> > of a State court in determining
> > whether actions filed in such court
> > should be joined, consolidated, or
> > otherwise allowed to proceed as a
> > single action.

Here there is no dispute that the Fleming & Associates
Plaintiffs' suits are based on Texas state law, that they involve
"covered securities" issued by Enron and sold on a major stock
exchange, and that they allege misrepresentations in connection
with Plaintiffs' purchase of Enron securities.  Disputed is whether
these individual suits constitute "covered class actions" within
the meaning of the statute.

The Financial Institutions argue that since these suits have
all been removed to this one Court and have been consolidated for
pretrial purposes, they now fall under SLUSA's second definition of
"covered class action" ("any group of lawsuits filed in or pending
in the same court and involving common questions of law or fact in
which (i) damages are sought on behalf of more than 50 persons; and

(ii) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 77p(2)(A)(ii)). Therefore they are preempted by SLUSA and should be dismissed with prejudice.   The Financial Institutions rely on Judge Cote's decision in *In re WorldCom, Inc. Sec. Litig. (Bell v. Ebbers)*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004)(finding that ten Mississippi state-law securities fraud suits, filed in different counties in Mississippi, with identically worded pleadings, each naming less than fifty plaintiffs, removed on "related to" bankruptcy jurisdiction, 28 U.S.C. § 1334(b), and consolidated in federal court for MDL pretrial proceedings, constituted a "group of lawsuits" within SLUSA's second definition of "covered class action," and therefore their actions were preempted and dismissal with prejudice was warranted).

In a reply, Fleming & Associates respond that each of the cases except for *Odam* was filed in state court in complete compliance with SLUSA so as to be nonremovable.   Fleming & Associates argue that the Financial Institutions' interpretation of the second prong of the "covered class action" provision is erroneous (1) in construing "pending in the same court" as referring to federal as well as to state court and (2) in arguing that the cases are "joined, consolidated" or coordinated in this MDL court and "proceed[ing] as a single action for any purpose" and thus must be dismissed, making amendment futile.   Fleming & Associates object that the Financial Institutions are relying on

the second part of 15 U.S.C. § 77p(f)(2)(A)(ii), SLUSA's definition
section, ignoring the rest of the statute.  For example, Fleming &
Associates point to Section 2, "FINDINGS", subsection 5, to argue
that the Financial Institutions have ignored this plain and
unambiguous expression of the statute's object and policy to
subject only securities-related class actions, and not individual
actions, to SLUSA removal and preemption:

> (5) in order to prevent certain State private securities
> class action lawsuits alleging fraud from being used to
> frustrate the objectives of the Private Securities
> Litigation Reform Act of 1995, it is appropriate to enact
> national standards for securities class action lawsuits
> involving nationally traded securities, while preserving
> the appropriate enforcement powers of State securities
> regulators and not changing the current treatment of
> individual lawsuits.

They contend that the Financial Institutions did not examine
Subsection D ("Rule of Construction") of the definitional section
for "covered class action":  "Nothing in this paragraph shall be
construed to affect the discretion of the **State** court in
determining whether actions filed in such court should be joined,
consolidated or otherwise allowed to proceed in a single action,"
especially when read against the repeated juxtaposition of
"federal" and "state" throughout the statute where both
jurisdictions were meant to be included.  15 U.S.C. §
77p(f)(2)(D)(emphasis added).  They also quote *Merrill Lynch,
Fenner & Smith v. Dabit*, 126 S. Ct. 1503, 1514 (2006):  "SLUSA pre-
empts state-law . . . class-action claims. . . [by denying]
plaintiffs the right to use the class action device to vindicate

certain claims.  The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist."

Fleming and Associates point out that this Court long ago recognized the restrictions on SLUSA preemption, as have many others.  *See, e.g., In re Enron Corp. Securities, Derivative & ERISA Litig.*, No. Civ. A. H-01-3624, 2002 WL 32107216, *3 (S.D. Tex. Aug. 12, 2002)("SLUSA in essence made the federal court the exclusive venue for securities fraud class actions meeting its definitions and ensured they would be governed exclusively by federal law. . . ."; "in SLUSA Congress did not evidence an intent to occupy the entire field as securities regulation, but expressly delineated the scope of preemption"); *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 632-33 (S.D. Tex. 2003)("SLUSA does not completely preempt the field of securities regulation; instead its preemptive scope is limited by the substantive requirements of its removal provisions, its unique definition of class action, and its automatic dismissal of certain kinds of securities-related claims.").  The firm also quotes from the legislative history to support its contention that SLUSA "curbs only securities class actions bringing state claims--not individual securities actions (#106 at 11)":

> The definition of class action originally drafted as part
> of [SLUSA] would inadvertently include cases that were
> beyond the intent of the legislation--such as certain
> types of individual state private securities actions. .
> . . In order to ensure that individual state actions
> would not be included as part of the bill's definitions

> . . . . the committee specifically included a threshold
> number of 50 or more persons as part of the definition of
> a class action under this legislation.

S. Rep. No. 105-182 (1998), available at 1998 WL 226714 at *6 (May

4, 1998).[4]

Fleming & Associates insist, "Given its express statutory

purpose, any construction of SLUSA that would allow for after-the-

fact, de facto preemption and dismissal of cases originally

unremovable under SLUSA is a nonsensical interpretation that runs

afoul of the statute."  H-03-5334, #106 at 11.

### Court's Determination

In *WorldCom*, 308 F. Supp. 2d at 240, the same lawyers filed

identical complaints ("verbatim copies of each other right down to

the typographical errors"), except for the names of plaintiffs and

of the counties in which they were filed, in ten different

individual actions commenced in nine separate Mississippi counties,

each case with fewer than fifty plaintiffs and asserting

exclusively state law claims.  Altogether in the ten suits there

were a total of 293 plaintiffs.  The cases were removed by WorldCom

to the Northern District of Mississippi based on "related to"

WorldCom's bankruptcy jurisdiction, some on additional grounds.

The individual actions were then transferred by the Judicial Panel

on Multidistrict Litigation to the Southern District of New York,

---

[4]This Court notes that Fleming and Associates fails to address
the fact that the statute created a unique definition of "covered
class action" that does not comport with the traditional definition
of "individual" versus "class" action.

where they were consolidated for pre-trial proceedings with class action securities suits against WorldCom on Judge Cote's finding that they shared common questions of law and fact and that consolidation was necessary for purposes of economy and substantial justice.

Motions to dismiss were filed in the individual actions, *inter alia* arguing for SLUSA preemption and dismissal of the ten individual actions because, taken together, they constituted a "covered class action." *Id.* at 241. Judge Cote noted that not only did the same attorneys file the same complaint in the ten actions, but they "continued to act in unison following their filing" by submitting identical court papers, and that it was "undisputed that the attorneys . . . coordinated the filing" of the ten actions "with the intention of evading SLUSA's preemption provision." *Id.* at 240, 241.

Judge Cote set out several established canons of statutory construction and applied them in ruling on the motions pending before her: (1) where the statute's meaning is clear and unambiguous, as determined by the reference to the language itself, the specific context in which it is used, and the statute as a whole, it should be followed; (2) the court must give effect, if possible to each clause and word of the statute; and (3) the court should turn to legislative history only when the meaning is ambiguous. 308 F. Supp. 2d at 244.

Judge Cote first determined that plaintiffs' attorneys had succeeded in circumventing the reach of the first definition of a covered class action because none of the ten suits satisfied the element of an unambiguous "single lawsuit" brought on behalf of more than fifty persons.  308 F. Supp. 2d at 245, *citing* 15 U.S.C. § 78bb(f)(5)(b)(I).  She further pointed out that because the second prong addresses a "group" of lawsuits, Congress could not have intended that the first prong's "single lawsuit" encompass more than one action.  *Id.*  Although she observed that "the courts in this circuit have consistently rejected plaintiffs' attempts through artful pleading to avoid the clear precepts of SLUSA and its preemption of state law securities claims for damages," nevertheless she opined, "The existence of a calculated strategy to avoid SLUSA preemption does not, by itself, permit a finding of a preemption." *Id.* at 245, 246*, citing Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002).[5]

---

[5] In affirming an earlier injunction issued by this Court under the All Writs Act enjoining Fleming & Associates from filing without permission from this Court any future state court actions that disrupted the federal securities class action, the Fifth Circuit indicated that Fleming & Associates's multiple actions, each crafted on behalf of less than fifty plaintiffs to avoid the reach of SLUSA, "are not themselves an abuse of the courts" and therefore this court could not "predicate future denials of leave [to file additional lawsuits] solely upon Fleming's desire" to circumvent that statute and its preemption provision.  *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002).  The panel pronounced, "We do not question the filing of suits tailored to avoid federal jurisdiction.  Nor do we countenance any preemptive federal dominion.  The parallel exercise of state and federal judicial power is inherent in our government of dual sovereignty." *Id.* at 303.

She then turned to the also clear and unambiguous "second prong of the SLUSA test: the "'group of lawsuits' category" where the actions were "'filed in or pending in the same court' in which damages are sought on behalf of more than 50 persons and the lawsuits are 'joined, consolidated, or otherwise proceed as a single action for any purpose.'" *Id., citing* 15 U.S.C. § 78bb(f)(5)(b)(ii). She reasoned that since the complaints asserting the same causes of action under Mississippi law were identical, they necessarily involve common questions of fact, the ten actions were all pending in one court and had been since their initial removal from Mississippi state courts, and they were consolidated, without opposition from the plaintiffs, after transfer by the Judicial Panel on Multidistrict Litigation and would remain consolidated for the entirety of pre-trial proceedings. Thus she found that they were joined, consolidated, and "unquestionably 'proceed[ing] as a single action'" for pretrial purposes. *Id.* at 246. The plaintiffs in those ten actions argued, like Fleming & Associates Plaintiffs here, that the second prong is satisfied only when the lawsuits proceed in a single action in state court. Judge Cote rejected the argument, concluding that the statute did not require the actions to be pending in the same state court or joined, consolidated or otherwise proceed as a single action in state court; instead it used the phrase, "same court." *Id.* at 246, *citing* 15 U.S.C. § 78bb(f)(5)(b)(ii). Moreover, SLUSA elsewhere expressly provides, "Class Action Limitations.-No covered

class action based upon the statutory or common law of any State or
subdivision thereof may be maintained in any State or Federal court
by any private party . . . ."  *Id., citing* 15 U.S.C. § 77p(1)(b).
Judge Cote further observed that since there was "related to"
bankruptcy jurisdiction over the ten actions, they would remain in
federal court for all purposes.  She highlighted the fact that
removal pursuant to SLUSA was not being used to bootstrap a finding
of SLUSA preemption.

As for § 77p(f)(2)(D) and § 78bb(f)(5)(F), regarding
construction of the preemption provisions, Judge Cote explained,

> This passage, and other SLUSA provisions, simply
> underscore the explicit determination by Congress that
> SLUSA not change the 'current treatment of individual
> lawsuits,' or the enforcement power of state security
> regulators. . . . . This passage does not require that
> any court action that results in lawsuits proceeding as
> a single action occur only in state court.  To read this
> passage as the plaintiffs suggest would create an
> inconsistency with the statutory directive quoted above,
> to wit, that "no covered class action . . . may be
> maintained . . . in Federal court."

308 F. Supp. 2d at 247, *citing* SLUSA, Pub. L. No. 105-353 §§ 2(5).
Furthermore, Judge Cote quoted from the Senate Banking Committee
report on SLUSA,

> The Committee does not intend for the bill to prevent
> plaintiffs from bringing bona fide individual actions
> simply because more than fifty persons commence the
> actions in the same state court against a single
> defendant.  However, the provisions of the bill would
> apply where the court orders that the suits be joined,
> consolidated, or otherwise proceed as a single action *at
> the state court level.*

308 F. Supp. 2d at 247, *quoting* S. Rept. 105-182 at 7-8 (emphasis
supplied by Judge Cote.  She concludes the passage "underscores

congressional intent to preempt state court litigation whenever separately filed suits are consolidated, even where the suits are 'bona fide individual actions" and does not distinguish between a federal and a state court action.  *Id.*

The Court finds Judge Cote's opinion to be well reasoned and very persuasive.  The same procedural and factual scenario that Judge Cote addressed is paralleled by the Fleming & Associates' individual actions here:  identical complaints of exclusively Texas state-law claims by fewer than fifty plaintiffs filed in various Texas jurisdictions, removed on "related to" bankruptcy jurisdiction, consolidated or coordinated with *Newby* without objection from the Plaintiffs for pretrial purposes, and prosecuted "in unison" in the filing of identical motions and briefs. Moreover Fleming even filed the *Odam* suit in this court, asserting "related to" bankruptcy jurisdiction, and filing identical pleadings in it.  Thus the Court finds that all these actions are preempted by SLUSA, that therefore the motions for leave to amend in the nine actions should be denied as futile, and that all ten cases should be dismissed with prejudice.

## II.  Bank of America Defendants

Bank of America joins the SLUSA preemption argument asserted by the Financial Institutions.  Although the Court had determined that the actions are preempted by SLUSA and therefore subject to dismissal with prejudice, in the event of reversal upon appeal, it

issues the following ruling on the other issues raised in Bank of America's opposition.

Bank of America, which also was not named as a defendant before the proposed amended complaint, further maintains that amendment should be denied as futile because the proposed claims against Bank of America are either time-barred and not rescued by the *American Pipe* tolling doctrine or are insufficient to withstand dismissal under the Court's earlier orders.

### Court's Determination

In issuing the July 11 2003 scheduling order (#4836) and its amendment by the July 11, 1006 order (#4848), this Court fully intended to toll the statute of limitations from running in the *Newby* consolidated and coordinated cases from entry of the order until it certified the class in *Newby* and gave plaintiffs in the consolidated and coordinated cases a schedule to opt out and to file motions for leave to amend; otherwise Plaintiffs would have been deprived of their right to pursue their claims.[6]  Thus any claims not time-barred as of July 11, 2003, not July 18, 2006 when Fleming & Associates filed its motion for leave to amend, were timely asserted and statutes of limitations were tolled by the order.

---

[6]The Court certified the *Newby* class on July 5, 2003.  Fleming & Associates Plaintiffs, in accordance with the amended scheduling order, on July 18, 2006 timely filed its statement indicating it was opting out and choosing to proceed independently  and on August 17 or 18, 2006 timely filed the motions for leave to amend.

Indeed, under Bank of America's own analysis as to when the alleged causes of action accrued, which the Court will not reiterate, the common law claims against it with statutes of limitations that begin to run only as of inquiry notice to Plaintiffs, such as civil conspiracy and fraud, are not time-barred.  For example, Bank of America maintains that inquiry notice of claims based on the Bammel transaction was given by the public distribution of Court Appointed Enron Bankruptcy Examiner Neal Batson's Second Interim Report on March 5, 2003 or the proposed amended complaint filed in the *Silvercreek* action on March 28, 2003; in either case, limitations was tolled until now by the July 6, 2003 scheduling order and Plaintiffs' timely filing of its motion for leave to amend after giving notice of opt out.  Bank of America claims that the statute of limitations for claims under Article 581-33 of the Texas Securities Act (no more than three years after discovery of the untruth or omission or after discovery should have been made, but in no event more than five years after the sale of the relevant securities) began to  run for claims based on its alleged investment in LJM2, participation in Bammel, and provision of analyst reports with the filing of the April 8, 2002 *Newby* complaint; again, the July 6, 2003 scheduling order tolled the statute of limitations until the present.

Moreover, although Bank of America seeks to have claims against its analyst reports dismissed based on the Court's finding that similar allegations in the complaint in *Silver Management,*

*Inc. v. Salomon Smith Barney, Inc.*, H-02-3185, were insufficient to state a claim, the Court must examine each complaint by itself. Sufficiency of pleading should properly be raised in motions to dismiss filed in response to the proposed amended complaint.

Bank of America further argues that Texas has not clearly recognized a cause of action for aiding and abetting common law fraud. *Ernst & Young, L.L.P. v. Pacific Mutual Life Ins.* Co., 51 S.W.3d 573, 583 n.7 (2001)(not reaching issue of whether Texas law recognizes a cause of action for 'aiding and abetting' fraud separate and apart from a conspiracy claim"),[7] *reversing on other grounds and citing Pacific Mutual Life Ins.* Co. *v. Ernst & Young, L.L.P.*, 10 S.W.3d 798, 809 n.12 (Tex. App.--Dallas 2000)("For purposes of this opinion, we assume, without deciding, that such a claim may be asserted in Texas, but our decision should not be construed as a holding that such a claim exists in Texas separate and apart from a conspiracy claim."). *See also Prospect High Income Fund v. Grant Thorton, L.L.P.*, 203 S.W.3d 602, 616 (Tex. App.--Dallas 2006)("The Texas Supreme Court has not recognized a separate tort of aiding and abetting fraud.").[8] This Court agrees.

_____

[7] Fleming & Associates Plaintiffs argue that they have pleaded both conspiracy to commit fraud and aiding and abetting. The Court's response then is that, as a separately pleaded claim, the aiding and abetting claim is redundant and unnecessary.

[8] In contrast the Texas Securities Act does expressly provide for aider liability, jointly and severally with the primary violator. Tex. Rev. Civ. Stat. Ann. art. 581-33F(2). It defines an aider as one "who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security." *Id.* at art. 581-33F(1)-(2). The Texas Supreme Court has held that the

Furthermore, the Court observes that the Texas Supreme Court also has not recognized liability for injuries under the "concert of action" theory, a version[9] of which is embodied in the Restatement (Second) of Torts § 876 (1977)("Persons Acting in Concert"), "imposing liability on a person for the conduct of another which causes harm" if the defendant:

> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996)("whether such a theory of liability is recognized in Texas is an open question.").

*See also Shinn v. Allen*, 984 S.W. 2d 308, 310-11 (Tex. App.–Houston [1st Dist.] 1998).   In particular, regarding § 876(b), which

---

Act's "scienter requirement of 'reckless disregard for the truth or the law' standard means that an alleged aider can only be liable if it rendered assistance 'in the face of a perceived risk,' that its assistance would facilitate untruthful or illegal activity by the primary violator. . . . In order to perceive such a risk, the alleged aider must possess a ''general awareness that his role was part of an overall activity that is improper.''"   *Sterling Trust Co. v. Adderley*, 168 S.W. 3d 835, 842 (Tex. 2005).   The Act does not require the aider to have had direct dealing with the defrauded investor.   *Id.* at 843.

[9]The Texas Supreme Court also discusses the version of concert of action in W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 46 at 323 (5th ed. 1984):   "All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable."   *Juhl*, 936 S.W. 2d at 643. *See also Shinn v, Allen*, 984 S.W. 2d 308, 310 (Tex. App.–Houston [1st Dist.] 1998).

- 21 -

"imposes liability not for an agreement [as in subsection (a)], but
for substantially assisting and encouraging a wrongdoer in a
tortious act" and which "requires that the defendant have 'an
unlawful intent, i.e., knowledge that the other party is breaching
a duty and the intent to assist that party's actions,'" the Texas
Supreme Court listed a number of jurisdictions that have recognized
that provisions in at least some circumstances, even though not all
formally adopted it.   *Id.* at 644.   The high court observed that
"[t]he purpose of the concert of action theory is to deter
antisocial or dangerous behavior," such as a group assault on an
individual, high way drag racing, "conduct imposing a high degree
of risk to others," or "highly dangerous, deviant, or anti-social
group activity which was likely to cause serious injury or death to
a person or certain harm to a large number of people." *Id.* at 644-
45.  None of these concerns appears applicable to the claims against
the banks in the Fleming & Associates' cases.

Finally, Bank of America urges that the proposed amendment, if
permitted, would be severely prejudicial to it because the new
complaints assert claims based on different facts and legal theories
than those raised in *Newby.*  Because new plaintiffs would be added,
additional discovery would be required.  It also reserves the right
to file a motion to dismiss.

Fleming & Associates respond that Bank of America has already
been named as a third-party defendant in *Bullock*, charged with
substantially similar claims as in the Fleming & Associates
Plaintiffs' amended complaints.  (Bank of America replies that it

was only so named in *Bullock* for a short time, after Arthur Andersen LLP filed a third-party petition for contribution against it, but then the parties resolved the issue before discovery.)   The firm contends that Bank of America is not a newly added party because it has been involved as a defendant in MDL 1446 and the Enron litigation for a long time.   In the course of that litigation, moreover, Bank of America has had the opportunity to participate in all discovery in MDL 1446.   Fleming & Associates explain that the "new plaintiffs" are not new parties, but merely corrected names or substituted estates for deceased plaintiffs, and the claims against them are the same as those pleaded in the original complaint and identified during discovery.

If the Court were not dismissing these suits based on SLUSA preemption, with respect to any claimed prejudice, if Bank of America demonstrated to the Court that specific discovery was needed, the Court would allow additional necessary depositions.

Accordingly, for the reasons indicated above, the Court

ORDERS that Fleming & Associates Plaintiffs' motions for leave to amend are DENIED as futile and all ten cases listed in the style of this opinion and order are DISMISSED with prejudice because they are preempted by SLUSA.

**SIGNED** at Houston, Texas, this 12th day of December, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

- 23 -